UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
-------------------------------------------------------------------------X
TABITHA PEARL RICKS,

                                                                    Civil Docket No: 18-cv-09767

                                        Plaintiff,

         -against-

FRIENDS OF WWOZ, INC.,
ELIZABETH ARROYO UTTERBACK, *individually*,
BEAU ROYSTER, *individually*,

                                        Defendants.
-------------------------------------------------------------------------X

| PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO THE COURT'S ORDER DATED JULY 16, 2019 (DOC. NO. 59) |
| :---: |

**DEREK SMITH LAW GROUP PLLC**
**Attorneys for Plaintiff**
**Caroline H. Miller, Esq., *Pro Hac***
**701 Brickell Avenue, Ste. 1310**
**Miami, Florida 33131**
**305-946-1884**

Plaintiff, Tabitha Pearl Ricks, ("Ricks"), by and through her attorneys, Derek Smith Law Group, PLLC, submits this Memorandum of Law, in response to the Court's Order, dated July 16, 2019, requesting supplemental information as to (1) Defendant's request that Plaintiff's Section 1981 action be dismissed, (2) Plaintiff's right to a private action pursuant to the New Orleans Municipal Code, and (3) Plaintiff's Claims against the individual defendants' pursuant to Counts two, three, four, and five.

## I.   PRELIMINARY STATEMENT

Plaintiff brings her claims against Defendants, Friends of WWOZ, Inc. ("WWOZ), as well as individuals Elizabeth Arroyo Utterback ("Utterback") and Beau Royster ("Royster") (hereinafter referred to collectively as "Defendants") for violations under 42 USC Section 1981, Title Vii of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Louisiana Employment Discrimination Law ("LEDL") and the New Orleas Code of Ordinances ("NOCO"). For the reasons more thoroughly submitted below, Defendant's Motion for Partial Summary Judgement of Title VII of the Civil Rights Act of 1964 and related State and Local Law Claims should be denied in its entirety.

As an initial matter, as the Court acknowledged, the Amend Complaint makes clear that Counts two, three, four, and five are all solely against the corporate defendant, as the caption states "Not Against Individual Defendants." *See Doc. 18*. To further clarify any ambiguity, Plaintiff voluntarily dismissed counts two, three, four and five as to the individual Defendants.

As is clear from Plaintiff's supplemented response more fully set forth below,

## II.  LEGAL ARGUMENT

1

**A. Defendants' request that Plaintiff's Section 1981 Cause of Action should be denied as a matter of law**

  **a. Defendant's Failed to Timely Request Summary Judgement of Ms. Ricks' Section 1981 Cause of Action**

As an initial matter, Defendants have expressly failed to timely request summary judgement as to Ms. Ricks' cause of action under Section 1981. Defendants' failure to at any point reference their desire to seek summary judgement of Ms. Ricks' Section 1981 cause of action cannot be overlooked. In failing to raise any issue surrounding Ms. Ricks' Section 1981, Defendants have thereby waived those issues.[1]

Unlike the decision of the Fifth Circuit in *Chen*, the Defendants' actions in preparing their motion was evident.[2]  In *Chen*, the court determined that the defendants' motions was meant to be exhaustive, as the defendant expressly requested that the court enter "summary judgement on all of plaintiff's remaining claims.[3]  Furthermore, the Defendants' initial motion included a footnote referencing the appropriate standard under which a 1981 analysis should be made.[4]  In the case at hand, the Defendants' filed six motions between June 10, 2019 and June 11, 2019, more than a month in advance of the court's deadline to file for Summary Judgement.

These motions expressly included: (1) Partial Summary Judgement of Plaintiff's Title VII and related state and local law claims (Doc. 28), (2) Partial Summary Judgement of Claims against Individual Defendants (Doc. 29), (3) Partial Summary Judgement of Plaintiff's ADA and related state and local law claims (Doc. 31), (4) Motion to in *limine* to exclude plaintiff's expert (doc. 32), (5) Motion to Dismiss for failure to state a claim against the individual defendants (doc. 34), and

---

[1]  *Lockett v. EPA*, 319 F.3d 678, 684 n. 16 (5th Cir.2003); *Starr v. Boudreaux*, 978 So.2d 384, 388–89 (La.App. 1st Cir.2007); *Yohey v. Collins*, 985 F.2d 222 (5th Cir.) citing *United States v. Prince,* 868 F.2d 1379, 1386 (5th Cir.)

[2]  *Chen v. Ochsner Clinic Foundation*, 630 Fed.Appx.218, (5th Cir., 2015).
[3]  *Id*. at 226.
[4]  *Id*.

(6) ex-parte motion for leave to file excess pages. Despite Defendants voluminous motion totaling over 108 pages of legal argument, at no time does do the Defendants' even so much as acknowledge Ms. Ricks' 1981 cause of action. Unlike the Defendant in *Chen*, Defendants in this action were express and deliberate in their actions, purposefully filing three separate summary judgement motions and outlining their legal argument to excess. Only upon Plaintiff's own acknowledgement did the Defendants' dare assert their "right" to summary judgement on the previously disregarded cause of action. As such, is it requested that the court deny defendants' one paragraph attempt to include 1981, as their failure to request such in their initial motion bars them from seeking such in their response.

### b.  Defendants discriminated against Ms. Ricks because of her complaints of Discrimination and hostile work environment

Assuming, *arguendo*, that the court finds the Defendants' have timely brought a motion for summary judgement as to Ms. Ricks' Section 1981, Defendants Motion should fail as substantial evidence exists to support plaintiff's claims of a racially hostile work environment and retaliation by the Defendants.

As has been previously asserted by this Court, "Section 1981 refers to racial discrimination in the making and enforcement of contracts and is designed to include a federal remedy against discrimination in employment on the basis of race."[5]  As with Title VII, Section 1981 governs over claims of race discrimination, racially hostile work environment and retaliation.[6]  Further, as referenced by this Court in its July 16, 2019 Order, claims pursuant to Section 1981 do <u>not</u> require

---

[5]  *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1983).
[6]  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004); *Hill v. Cleco Corp.*, 541 F. App'x 343, 346 (5th Cir. 2013); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651, 655 (5th Cir. 2004); *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003)

exhaustion of administrative remedies.[7]  Ultimately, these claims are subject to a four-year statute

of limitations.[8]  As the Defendants' have correctly cited in their one paragraph description of

Section 1981, the Court is to analyze Section 1981 under the same standard as Title VII.[9]  For the

foregoing reasons, Defendant is not entitled to Summary Judgement on Plaintiff's Section 1981 as

a matter of law.

  As argued at length in the response to defendants' motion for summary judgement of

Plaintiff Title VII claims, a discriminatory hostile work environment claim arises where the

asserted conduct create an environment that is offensive to the individual being victimized and

targeted for discrimination.[10]  A cause of action for hostile work environment is established

wherein the Plaintiff proves the following: (1) she belongs to a protected group; (2) she was

subjected to unwelcome harassment; (3) the harassment of which plaintiff complained was based

on a protected class; (4) the harassment affected a term, condition, or privilege of employment; and

(5) the employer knew or should have known of the harassment and failed to take remedial

action.[11]  This test is both subjective and objective, focusing on the Plaintiff's own impression in

connection with whether a reasonable personal person would find the asserted conduct to be

hostile or abusive.[12]  While under an analysis of the totality of circumstances, a single incident can

[7]  *Chen*, 2015 WL 6773929, at *6 (*citing Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 992 (5th Cir. 2005))
[8]  *Jones*, 541 U.S. at 383 (wrongful termination and hostile work environment); *Rothrock v. Gorman*, No. 3:12-CV-00241, 2013 WL 3461913, at *3 (S.D. Tex. July 1, 2013) (*citing Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003)) (retaliation); *Delaney v. Miss. Dep't of Pub. Safety*, No. 3:12CV229TSL-MTP, 2013 WL 286365, at *8 (S.D. Miss. Jan. 24, 2013), aff'd, 554 F. App'x 279 (5th Cir. 2014) (*citing Foley*, 355 F.3d at 339); *Willis v. Cleco Corp.*, No. 09-2103, 2011 WL 4443358, at *5 (W.D. La. 2011)) (retaliation)
[9]  *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).
[10]  *Hicks*, 712 So.2d at 658, *citing Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1049, n. 9 (5th Cir.1996).
[11]  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.2002); *Hicks*, 712 So.2d at 658–59, *citing Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir.1992).
[12]  *WC & M Enterprises*, 496 F.3d at 399, *citing Harris*, 510 U.S. at 21–22, 114 S.Ct. 367.

in fact be sufficient to arise to the level of a hostile work environment claim,[13] the court will also look for a regular pattern of frequent verbal ridicule or insults over a period of time.[14]

Plaintiff firmly reasserts that there exists no question as to whether Mr. McGee's racial and sexual conduct directed at Ms. Ricks arises to the level of hostile work environment. Defendant's original motions and subsequent replies devoid themselves of Ms. Ricks' personal experience, instead focusing on trivial isolated statements obtained within deposition testimony of the witnesses. Rather than acknowledge Ms. Ricks' own consistent assertions that this conduct was harmful to her and altered her work experience, Defendants instead highlight Mr. McGee's subjective and self-serving statement that had he made the statement it was not meant to be "negative or derogatory." Defendants overlooked Ms. Griffin's explicit belief that Mr. McGee was acting in a discriminatory manner, instead highlighting Ms. Griffin's own impression of whether the isolated phrase "black woman" offended her.

To make is absolutely clear, Mr. McGee's general approach with Ms. Ricks was replete with derogatory sexual and racial language. After the start of his employment, Mr. McGee regularly referred to Ms. Ricks' and similarly situated woman of color at the WWOZ office as "black woman."[15] This form of name calling occurred so frequently that Ms. Ricks lost count, only able to confirm that she heard it every month during which her and Mr. McGee's employment overlapped.[16] Mr. McGee would berate Ms. Ricks, scolding her publicly and stating phrases such as "just like a black woman to make my life difficult" and "typical black woman" and even so

---

[13] *WC & M Enterprises,* 496 F.3d at 400, *citing Harvill v. Westward Communications, L.L.C.,* 433 F.3d 428, 435–36 (5th Cir.2005).

[14] *See, e.g., Walker v. Thompson,* 214 F.3d 615, 626 (5th Cir.2000) (holding African–American employees who were subjected to a variety of racial slurs over three-year period raised fact issue as to whether slurs were sufficiently severe or pervasive to violate Title VII); *Farpella–Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir.1996) (plaintiff presented sufficient evidence from which a jury could find severe or pervasive harassment where plaintiff was subjected to offensive, sex-based comments two to three times per week).

[15] *See* Plaintiff's Opp. Exhibit 1, par. 8-9; *see also* Plaintiff's Opp. Exhibit 2, p. 53:16-20, p. 70:4-9; *See further* Plaintiff's Opp. Exhibit 3, p. 54:25-55:19, p. 56:8-57:2.

[16] *Id.* p. 54:1-55:14.

much as calling out to Ms. Ricks, not by her name but simply as "black woman."[17]  In fact, when pressed on this choice of language, Mr. McGee expressly stated that it was possible that he used the words "black woman" when speaking with Ms. Ricks and other female staff.[18]  Mr. McGee also commented on Ms. Ricks' "natural hair," providing disparaging commentary and insinuating that her attitude is in direct correlation to her natural hair.[19]  Ultimately, Mr. McGee even publicly demonized African American woman who chose to date Caucasian men, insisting that African American woman who did such where "sell outs," while African American men who did the same were held to a separate standard.[20]

Later, in September of 2017, a new couch was delivered to the WWOZ office. While in the presence of Mr. McGee, Jorge Fuentes made lude and sexually charged statements regarding staff having sex and leaving semen stains on the couch during Mardi Gras.[21]  Not only was Ms. Ricks yelled at by Mr. McGee for asking that he reprimand Mr. Fuentes, Mr. McGee proceeded to interject himself into a sexually fueled scenario for a *Caucasian* employee, Ms. Merz, a mere few weeks later.[22]  Again, Ms. Griffin was present for this conversation and the subsequent events with Ms. Merz, corroborating at length the facts laid out by Ms. Ricks.[23]

As with her Title VII claims, where the conduct asserted by the Plaintiff is attributable to her supervisor, as is undisputed in this matter, an employer can be held vicariously and strictly liable for the actions without any showing that the employer was itself negligent.[24]  The only defense to such arises under *Faragher-Ellerth.* Under the *Faragher-Ellerth* defense, "an employer will not be vicariously liable for harassment by a supervisor if it can show: (a) that the employer

---

[17] *Id*. p. 56:15-22.
[18] *See* Plaintiff's Opp. Exhibit 4, p. 35:20-365.
[19] Plaintiff's Opp. Exhibit 1, par. 12; *see also* Plaintiff's Opp. Exhibit 2, p. 87:14-24.
[20] *Id*. par. 18
[21] *Id*. par. 19; *see also* Plaintiff's Opp. Exhibit 2, p. 70:20-71:9.
[22] *Id*. par. 20-22; *see also* Plaintiff's Opp. Exhibit 2, p. 73:7-74:4, p. 78:4-14
[23] *See* Plaintiff's Opp. Exhibit 3, p. 49:12-51:2, 52:5-53:10.
[24] *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[25]  The test turns on a two prong analysis wherein the defense must demonstrate (1) the existence of a harassment policy promulgated to employees and properly implemented therein, and (2) when an employee does in fact complaint under said policy, the employer promptly conducts an investigation.[26]  To succeed, the employer must establish both prongs of the *Ellerth/Faragher* affirmative defense; otherwise the employer is not protected from vicarious liability for the supervisor's harassment.[27]

Again, the Defendant's cannot show that they exercised reasonable care to prevent and promptly correct the sexually and racially harassing conduct by Mr. McGee as is required by *Fargher. See Faragher*, 524 U.S. at 765. While the Fifth Circuit has accepted as "swift" action by an employer of over two months, the same facts do not apply herein.[28]  Ms. Ricks not only complained directly to the supervisor whom was responsible for the alleged conduct[29] but further escalated her complaints once it became apparent that the conduct would not stop. Ms. Ricks initiated the process of contacting human resources as prescribed in the Employee Handbook.[30]  Ms. Ricks contacted Chauncy Royster for guidance but, after multiple efforts to arrange a meeting, Ms. Ricks cancelled.[31]  In an effort to further deescalate and negative environment, Ms. Ricks instead chose to give herself space from Mr. McGee, hoping that in time the conduct would end,

---

[25]  *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 462 (5th Cir. 2013) (quoting *Watts v. Kroger Co.*, 170 F.3d 505, 509–10 (5th Cir. 1999)) (internal quotations omitted).
[26]  *Angeletti v. Lane*, No. 12-503, 2014 WL 4386063, at *4 (M.D. La. Sept. 4, 2014) (citing *Williams v. Admin. Review Bd.*, 376 F.3d 471, 478–79 (5th Cir. 2004)). *See also Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004) (per curiam) (finding that employer was entitled to rely on *Faragher- Ellerth* affirmative defense based on its swift investigation of the plaintiff's harassment claim and the subsequent termination of the plaintiff's supervisor).
[27]  *See Casiano v. AT&T Corp.*, 213 F.3d 278, 284 Appendix (5th Cir. 2000).
[28]  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 260-61, 266 (5th Cir. 1999) (calling a response "swift and appropriate" when plaintiff reported harassment in mid-September and the employer took remedial action in early November).
[29]  *See* Plaintiff's Opp. Exhibit 1, par. 11; *see also* Plaintiff's Opp. Exhibit 2, p. 59:19-61:1.
[30]  *See* Plaintiff's Opp. Exhibit 8.
[31]  *See* Plaintiff's Opp. Exhibit 1, par. 23-24; *see also* Plaintiff's Opp. Exhibit 2, 77:11-20; Plaintiff's Opp. Exhibit 9.

and she could return to her employment as usual.[32]  Ultimately, the conduct did not cease and Ms. Ricks felt she had no other choice but to seek outside guidance. On October 31, 2017, Ms. Ricks emailed Mr. Royster, at her wits end, needing to meet with him and outlining the misconduct to which she had been subjected at the hands of Mr. McGee.[33]  In the days to come, Ms. Ricks met with Mr. Royster, escalated her complaint to Ms. Utterback, and further escalated the complaint to the Board of Directors' HR Committee, hitting hurdles, threats and push back at each level.[34]

While the defense points to their conclusory letter from the Board as a swift two-week investigation, the truth remains that throughout those same two weeks, Ms. Ricks was regularly dissuaded from bringing her claims forward in accordance with Defendants' own policies. At her first "interview," Mr. Royster seemingly interrogated Ms. Ricks, the victim, suggestion that she be mindful of how this might impact her colleagues and demanding to know what she was seeking to accomplish.[35]  When meeting with Mr. Royster and Ms. Utterback, not only was Ms. Ricks categorically dismissed because of the battle of her word versus her supervisor, Ms. Ricks was encouraged *to not pursue the matter further*, both by being told the Board does not have time for such trivial matters and that she could find work elsewhere if she were unhappy.[36]  Mr. Royster and Ms. Utterback testified that   they limited their interview of the witnesses to three questions: (1) Do you feel or have you seen any evidence of a hostile work environment, either within your Department or at WWOZ in general? (2) If you were to observe or endure any hostile activity while working for WWOZ, do you feel you could approach your supervisor? And (3) if you were ever to have a concern in discussing an issue with Mr. McGee, do you feel comfortable with

---

[32] *See* Plaintiff's Opp. Exhibit 2, P. 62:2-14.
[33] *See* Plaintiff's Opp. Exhibit 10; *See also* Plaintiff's Opp. Exhibit 1, par. 25; Plaintiff's Opp. Exhibit 2, 119:8-15.
[34] *See* Plaintiff's Opp. Exhibit 1, par. 26-40.
[35] *Id.* Plaintiff's Opp. Exhibit 1, par. 27-28; *see also* Plaintiff's Opp. Exhibit 2, p. 125:14-126:24.
[36] *Id.* Plaintiff's Opp. Exhibit 1, par. 33-36; *see also* Plaintiff's Opp. Exhibit 2, p. 135:3-137:3.

bringing the matter to the CFO and/or the GM?[37]  This line of question so drastically strays into an area of ambiguity that none of the witnesses could reasonably be expected to answer accurately. In fact, Ms. Griffin, who had been interviewed by Mr. Royster and Ms. Utterback, was deposed in this matter and unequivocally verified the entirety of Mr. McGee's unlawful conduct.[38]

Lastly, the Board further whitewashed the review, interviewing only Ms. Ricks and Mr. McGee, failing to personally meet with the witnesses "interviewed" by Mr. Royster and Ms. Utterback, placing the blame on Ms. Ricks for allegedly not providing witnesses.[39]

Ultimately, the Defense cannot show that Ms. Ricks' herself failed to take advantage of any preventative and/or corrective opportunities. Defense relies on the court's prior conclusions that an employee's failure to utilize a reasonably promulgated complaint procedure satisfies prong two of *Faragher-Ellerth. Ellerth*, 524 U.S. at 765. In the case at hand, Ms. Ricks took advantage and acted swiftly in an effort to put to bed the ongoing outlandish treatment to which she was being subjected despite continued efforts by the Defendants to prevent her from doing such.

Furthermore, Ms. Ricks has established that the Defendants' retaliated against her because of her ongoing complaints of discrimination and hostile work environment pursuant to Section 1981. As with Ms. Ricks' Title VII claim, under the McDonnell Douglas framework, the plaintiff bears "the initial burden . . . of establishing a prima facie case of racial discrimination." 411 U.S. at 802. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. If the employer meets this burden, then the plaintiff must "demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." Id. at 805.

---

[37] *See* Plaintiff's Opp. Exhibit 11; *See further* Plaintiff's Opp. Exhibit 3, p. 63:13-22.
[38] *See* Plaintiff's Opp. Exhibit 5, p. 51:9-52:15; *see also* Plaintiff's Opp. Exhibit 6, p. 73:8-75:7.
[39] *See* Plaintiff's Opp. Exhibit 7, p. 23:2-11, p. 28:21-29:2.; *See also* Plaintiff's Opp. Exhibit 15 and Exhibit 16.

To establish a *prima facie* claim of retaliation, Ms. Ricks has the initial burden to show "(1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action."[40] A "Protected activity" is defined as opposition to any practice made unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. *Nigro v. St. Tammany Parish Hosp.,* 377 F.Supp.2d 595, 601 (E.D.La.2005) (J. Lemmon), *citing Green v. Administrators of the Tulane Educational Fund,* 284 F.3d 642, 657 (5th Cir.2002).

There can be no question that Ms. Ricks engaged in a protected activity on multiple occasions. As consistently maintained throughout this action, Ms. Ricks repeatedly requested that he refrain from referring to her as black woman, politely reminding him of her name to no avail.[41] Despite her polite requests and open dialogue, this only seemed to escalate the conduct. Mr. McGee preceded to further discredit Ms. Ricks, demanding to know "Are you a woman?" and "Do you identify as a woman?"[42]  In an effort to deescalate and negative environment, Ms. Ricks chose to give herself space from Mr. McGee, hoping that in time the conduct would end, and she could return to her employment as usual.[43]

Ultimately, Mr. McGee's actions were so unrelenting that Ms. Ricks felt she had no other choice but to seek outside guidance. On October 31, 2017, having reached her wits end, Ms. Ricks emailed Mr. Royster stating that she needed to meet with him, outlining the misconduct to which she had been subjected by Mr. McGee.[44] In the days to come, Ms. Ricks met with Mr. Royster,

---

[40]  *Drake v. Nicholson,* 324 Fed.Appx. 328, 331 (5th Cir.2009); *Holloway v. Department of Veterans Affairs,* 309 Fed.Appx. 816, 817–18 (5th Cir.2009); *LeMaire v. Louisiana,* 480 F.3d 383, 388 (5th Cir.2007); *Banks v. E. Baton Rouge Parish School Bd.,* 320 F.3d 570, 575 (5th Cir.2003).
[41]  *See* Plaintiff's Opp. Exhibit 1, par. 11; *see also* Plaintiff's Opp. Exhibit 2, p. 59:19-61:1.
[42]  *See* Plaintiff's Opp. Exhibit 1, par. 11.
[43]  *See* Plaintiff's Opp. Exhibit 2, P. 62:2-14.
[44]  *See* Plaintiff's Opp. Exhibit 10; *See also* Plaintiff's Opp. Exhibit 1, par. 25; Plaintiff's Opp. Exhibit 2, 119:8-15.

escalated her complaint to Ms. Utterback, and further escalated the complaint to the Board of Directors' HR Committee, hitting hurdles, threats and push back at each level.[45]

An "Adverse employment actions" include only ultimate employment decisions such as hiring, granting, leave, discharging, promoting, or compensating.[46] Ultimately, for an action to be prohibited, it must be "materially adverse" meaning that it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." [47] As a result of complaining to Defendants about the harassment, Ms. Ricks was summarily demoted, losing responsibilities that she had maintained throughout the course of her employment, including branding and discontinuing relations with multiple business/organization that she had maintained valuable connections.[48] These responsibilities were not only removed from her tasks but were instead given to my colleague Melanie Merz.[49] Additionally, Ms. Ricks was assured that she would receive a raise as a result of this asserted "change in role/duties" by Mr. McGee which Mr. McGee failed to initiate until Ms. Ricks personally contacted Mr. Royster.[50] While Ms. Ricks' raise did ultimately get pushed through, upon Mr. McGee hearing of Ms. Ricks' conversation with Mr. Royster, Mr. McGee again berated Ms. Ricks, threatening her employment for "insubordination." [51]

---

[45] *See* Plaintiff's Opp. Exhibit 1, par. 26-40.

[46] *See, e.g., Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 708 (5th Cir.1997) (in anti- retaliation case, Fifth Circuit held neither a verbal threat of being fired, a reprimand for not being at an assigned work station, a missed pay increase, nor being placed on "final warning," constituted ultimate employment actions due to their lack of ultimate consequence); *Dollis v. Rubin,* 77 F.3d 777, 779, 782 (5th Cir.1995) (in anti-retaliation case, Fifth Circuit held an employer's refusal to allow plaintiff employee to attend training sessions did not effect a material adverse change in terms or conditions of his employment, and thus did not   constitute an "ultimate employment decision").

[47] *See Stewart,* 586 F.3d at 331 (5th Cir. 2009) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)). By means of example, the court has reasoned the employer actions such as demotion, denial of pay increase, and failure to promote and even increased/heavier worklad, are materially adverse actions. *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (collecting cases). *See also*, *Breaux v. City of Garland,* 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."); *See also Stewart,* 586 F.3d at 332. The court has even summarized that reassignment under a particular set of facts could arise to the level of an adverse action. *White,* 548 U.S. at 71.

[48] *See* Plaintiff's Opp. Exhibit 1, par. 41-42; *see also* Plaintiff's Opp. Exhibit 2, p. 66:3-11.

[49] *Id.*, p. 66:24-67:4; *see also* Plaintiff's Opp. Exhibit 1, par. 14-16.

[50] *See* Plaintiff's Opp. Exhibit 2, p. 81:5-16, p. 83:13-23.

[51] *See* Plaintiff's Opp. Exhibit 1, par. 43-44; *see also* Exhibit 12.

Furthermore, it is clear from Mr. Royster's email on November 10, 2017, subsequent to Ms. Ricks meeting with the Board that the raise was being approved because, "I don't think we have much of a choice at this point."[52]

As Ms. Ricks has established a *prima facie* claim for retaliation, the burden in turn shifts to the defense to establish their legitimate non-discriminatory reason for their retaliatory conduct.[53] Even taking their assertions as true, it is clear that the reason is merely pretext for the underlying retaliation.[54] "In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable fact-finder to conclude that 'the adverse [employment] action would not have occurred 'but for'' the employee's decision to engage in an activity protected by Title VII."[55]

Despite defendants ongoing pontificating regarding their efforts to restructure and remodel their department, their own internal records in combination with the deposition testimony make it clear that this was a half hearted and incomplete efforted, wherein Mr. McGee was actually acting with directed malice towards Ms. Ricks. As an initial matter, defendants own organization charts both before Ms. Ricks' discharge and subsequent thereto make it clear that the title did not change.[56]

"To survive summary judgment on a constructive discharge claim, the plaintiff must provide evidence that working conditions were 'so intolerable that a reasonable employee in her position would [have felt] compelled to resign.'" *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004) (quoting *Webb v. Cardiothoracic Surgery Assocs. of N. Tex.,* 139

---

[52] *See* Plaintiff's Opp. Exhibit 14.
[53] *Baker v. American Airlines, Inc.,* 430 F.3d 750, 755 (5th Cir.2005), *citing Septimus v. Univ. of Houston,* 399 F.3d 601, 610 (5th Cir.2005).
[54] *Baker,* 430 F.3d at 755, *citing Pineda v. United Parcel Service, Inc.,* 360 F.3d 483, 487 (5th Cir.2004).
[55] *Alkhawaldeh v. Dow Chemical Co.,* 851 F.3d 422, 427 (5th Cir. 2017) (citations omitted).
[56] *See* Plaintiff's Opp. Exhibit 17.

F.3d 532, 539 (5th Cir. 1998)). The court requires a higher standard of "aggravating factors" resulting in "a greater degree of harassment than is required for a hostile work environment claim." *Id.* at 331–32. The court takes into consideration the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.* at 331–32. Ultimately, feeling as there existed no other recourse, and seeing as though the Defendants had no desire to engage in a reasonable interactive process or take her complaints of outright, blatant discrimination seriously, Ms. Ricks made the difficult decision to leave her employment at WWOZ, hoping she would be able to move forward in a safer environment.[57] While defense would hold over her head that Ms. Ricks letter of resignation did not outright rehash all of the unbearable conduct she endured, the e-mails correspondence and interviews in the weeks leading up to her discharge make it clear that the burden of the work environment was unreasonably weighing on her and causing her serious harm.[58]

Ultimately, Ms. Ricks has established a *prima facie* claim for retaliation, and has shown that the legitimate reason articulated by the defense no more than mere pretext for actual retaliation.

As it pertains to the individually named Defendants, plaintiff maintains the Defendants Utterback and Royster retaliated against Ms. Ricks because of her ongoing complaints of discrimination and hostile work environment. The analysis, as outlined above, provides that Section 1981 is governed by the same *McDonnell Douglas* burden-shifting framework applied

---

[57] *See* Plaintiff's Opp. Exhibit 1, par. 56-58.
[58] *Id.*; *See also* Plaintiff's Opp. Exhibit 13.

above. Furthermore, "an employee who exercises control over the plaintiff with respect to an employment decision may be individually liable if the employee was '*essentially the same*' as the employer in exercising this authority."[59]  There can be no questions that both Defendants Royster and Defendant Utterback had authority over Ms. Ricks with respect to employment decisions.

As an initial matter, Ms. Ricks can establish a *prima facie* claim for retaliation. Having hit her breaking point with the ongoing harassment at the hands of Mr. McGee, on October 31, 2017 Ms. Ricks emailed Mr. Royster stating that she needed to meet with him, outlining the misconduct to which she had been subjected by Mr. McGee.[60]  In the days to come, Ms. Ricks met with Mr. Royster, escalated her complaint to Ms. Utterback, and further escalated the complaint to the Board of Directors' HR Committee, hitting hurdles, threats and push back at each level.[61]

As a result of complaining to Defendants about the harassment, Ms. Ricks was summarily demoted, losing responsibilities that she had maintained throughout the course of her employment, including branding and discontinuing relations with multiple business/organization that she had maintained valuable connections.[62]  These responsibilities were not only removed from her tasks but were instead given to my colleague Melanie Merz.[63]  Additionally, Ms. Ricks was assured that she would receive a raise as a result of this asserted "change in role/duties" by Mr. McGee which Mr. McGee failed to initiate until Ms. Ricks personally contacted Mr. Royster.[64]  While Ms. Ricks' raise did ultimately get pushed through, upon Mr. McGee hearing of Ms. Ricks' conversation with Mr. Royster, Mr. McGee again berated Ms. Ricks, threatening her employment for "insubordination."[65]  Furthermore, it is clear from Mr. Royster's email on November 10, 2017,

---

[59] *Miller,* 541 F.Supp.2d at 862–863 (*citing Foley v. University of Houston,* 355 F.3d 333, 337–38 (5th Cir.2003))
[60] *See* Plaintiff's Opp. Exhibit 10; *See also* Plaintiff's Opp. Exhibit 1, par. 25; Plaintiff's Opp. Exhibit 2, 119:8-15.
[61] *See* Plaintiff's Opp. Exhibit 1, par. 26-40.
[62] *See* Plaintiff's Opp. Exhibit 1, par. 41-42; *see also* Plaintiff's Opp. Exhibit 2, p. 66:3-11.
[63] *Id*., p. 66:24-67:4; *see also* Plaintiff's Opp. Exhibit 1, par. 14-16.
[64] *See* Plaintiff's Opp. Exhibit 2, p. 81:5-16, p. 83:13-23.
[65] *See* Plaintiff's Opp. Exhibit 1, par. 43-44; *see also* Exhibit 12.

subsequent to Ms. Ricks meeting with the Board that the raise was being approved because, "I don't think we have much of a choice at this point."[66]

Having established a *prima facie* claim for retaliation, the burden in turn shifts to the defense to establish their legitimate non-discriminatory reason for their retaliatory conduct.[67]   The Defendants' own internal records in combination with the deposition testimony make it clear that this was a half hearted and incomplete efforted, wherein Mr. McGee was actually acting with directed malice towards Ms. Ricks. As an initial matter, defendants' organization charts both before Ms. Ricks' discharge and subsequent thereto make it clear that the title did not change.[68]

Ultimately, feeling as there existed no other recourse, that her complaints were being dissuaded and outright ignored, and seeing as though the Defendants had no desire to engage in a reasonable interactive process or take her complaints of outright, blatant discrimination seriously, Ms. Ricks made the difficult decision to leave her employment at WWOZ, hoping she would be able to move forward in a safer environment.[69]  In their roles as "Directors" and "investigators" and supervisors to Ms. Ricks, it cannot be argued that Defendants Royster and Utterback with the corporate Defendant WWOZ. Furthermore, their own personal actions in retaliating against Ms. Ricks' by vocally dissuading her from complaining and failing to reasonable investigate the allegations by Ms. Ricks creates liability for retaliation.[70]

---

[66] *See* Plaintiff's Opp. Exhibit 14.
[67] *Baker v. American Airlines, Inc.,* 430 F.3d 750, 755 (5th Cir.2005), *citing Septimus v. Univ. of Houston,* 399 F.3d 601, 610 (5th Cir.2005).
[68] *See* Plaintiff's Opp. Exhibit 17.
[69] *See* Plaintiff's Opp. Exhibit 1, par. 56-58.
[70] *McClennan v. Oncor Elec. Delivery Co. LLC*, 2012 WL 3072340 (N.D. Texas, July 6, 2012).

**B. Defendants' Are Liable to Ms. Ricks Pursuant to her private right of Action under the New Orleans Municipal Code**

Upon further review, it is clear that despite the extensive efforts to ensure coverage for Plaintiff's under the New Orleans Municipal Code, the Code has not expressly provided for a private right cause of action. As such, Plaintiff voluntarily withdraws Counts Eight, Nine and Ten as to all parties.

## III.   CONCLUSION

For the reasons set forth herein, Plaintiff again respectfully requests that Defendant's partial motion for summary judgment as to Plaintiff's Title VII claims, Plaintiff's Disability Claims, Plaintiff's Claims against the individual defendants, as well as Plaintiff's related state and local claims, should be denied in their entirety. Furthermore, Plaintiff request this court disregard Defendant's delayed effort to include Plaintiff's Section 1981 claim in their original motion as (1) it is clear that their intent was never to include such and (2) all defendants' are liable for conduct alleged pursuant to Section 1981.

Dated:   July 30, 2019

           /s/ Caroline H. Miller, Esq.

           Caroline H. Miller, Esquire
           DEREK SMITH LAW GROUP, PLLC
           *Attorneys for Plaintiff*
           701 Brickell Avenue, Suite 1310
           Miami, Florida 33131
           (305) 946-1884